**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

ZYNO MEDICAL LLC,

               Plaintiff,

      v.

U.S. CUSTOMS AND BORDER
PROTECTION; RODNEY S. SCOTT, in his
official capacity as Commissioner of U.S.
Customs and Border Protection; U.S.
DEPARTMENT OF THE TREASURY;
SCOTT BESSENT, in his official capacity as
the Secretary of the Treasury; and the
UNITED STATES OF AMERICA,
               Defendants.

No. 26-02900

**COMPLAINT**

Zyno Medical LLC ("Plaintiff"), by and through its undersigned counsel, alleges the following:

1.     Plaintiff Zyno Medical LLC is a Massachusetts-based importer, as defined in in 19 C.F.R 101.1, of merchandise into the United States subject to the challenged duties.

2.     Starting in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act ("IEEPA") as the basis to impose new and sweeping tariffs ("IEEPA duties") on goods imported from a multitude of countries, including countries from which Plaintiff imports its goods.

3.     As the importer of record, Plaintiff is responsible for paying duties on the goods it imports into the United States to Defendant U.S. Customs and Border Protection ("CBP") and has paid more than $1,000,000 in IEEPA duties to date.  Plaintiff paid these IEEPA duties at

1

importation as required by CBP. CBP reviewed these entries during liquidation and some of these entries were liquidated through CBP's liquidation process.

4. On February 20, 2026, the U.S. Supreme Court held that "IEEPA does not authorize the President to impose tariffs" and therefore the IEEPA duties are unlawful. *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) ("*Learning Resources*").

5. Further, the Supreme Court confirmed that challenges related to the IEEPA duties fall within the exclusive jurisdiction of this Court. *Id.* at 5, n.1; 28 U.S.C. § 1581(i)(1)(B). Following *Learning Resources*, this Court has jurisdiction to hear cases involving the refund of IEEPA duties and the authority to order relief in the form of refunds of IEEPA duties paid by importers.

6. This action is necessary because, despite the U.S. Supreme Court ruling more than one month ago in *Learning Resources, Inc. v. Trump*, the Defendants have not publicly committed to provide refunds to Plaintiff or those similarly situated to Plaintiff for duties unlawfully collected. Plaintiff is aware of the proceedings in this Court in *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection et al.*, 25-00595 (Ct. Int.'l Trade)and CBP's development of the CAPE system. Importantly, however, Defendants have not committed to compliance with the Court's suspended Order issued in that case without seeking further appellate review. Order, *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection et al.*, 25-00595 (Ct. Int.'l Trade Apr. 7, 2026) ECF. No. 12.

7. CBP has neither refunded payment of the unlawful tariffs collected from Plaintiff nor announced a decision to refund all unlawful tariff collections in the near future. Plaintiff seeks (i) a declaration that CBP's affirmative liquidation of Plaintiff's entries with IEEPA duties

is unlawful; (ii) and injunction preventing Defendants from liquidating Plaintiff's entries with IEEPA duties; (iii) a full refund from Defendants of all the IEEPA duties that Plaintiff has paid to the United States, including interest as required by law; and (iv) reasonable costs, including and attorneys' fees, incurred in bringing this action.

## PARTIES

8.      Zyno Medical LLC is an FDA-registered medical device company, located in Natick, Massachusetts.  Zyno Medical LLC designs and manufactures the Z-800 line of large volume infusion pumps and accessories and imports medical equipment and accessories.

9.      Defendant U.S. Customs and Border Protection is a component agency of the U.S. Department of Homeland Security and is headquartered in Washington, D.C.  CBP is the U.S. Department of Homeland Security agency tasked with collecting tariffs or duties on goods imported to the United States.  CBP facilitated the collection of the IEEPA duties.

10.      Defendant Rodney S. Scott is the Commissioner of CBP and is named as a Defendant in his official capacity.

11.      Defendant U.S. Department of Treasury, headquartered in Washington, D.C., is responsible for consulting with the U.S. Department of Homeland Security and other agencies about the legal authority for and financial implementation of the IEEPA duties along with the collection of IEEPA duties paid.

12.      Defendant Scott Bessent is the Secretary of the U.S. Department of Treasury and is named as a Defendant in his official capacity.

13.      Defendant United States of America received the disputed IEEPA duties and is a statutory defendant.  *See* 5 U.S.C. § 702; 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION

3

14. This Court has exclusive jurisdiction over this action as it "arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue . . . or . . . administration and enforcement" of these tariffs. *See* 28 U.S.C. § 2631(i); *see also Learning Resources*, slip op. at 5, n.1.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i).

16. This Court has all the powers in law and equity of a district court of the United States. *See* 28 U.S.C. § 1585. When a civil action arises under 28 U.S.C. § 1581, this Court can order a money judgment against the United States. 28 U.S.C. § 2643(a)(1). Additionally, this Court can order any other appropriate civil relief. 28 U.S.C. § 2643(c)(1).

17. Plaintiff has standing to pursue this action because it was the importer of record of goods subject to IEEPA duties. Plaintiff suffered a direct injury in paying IEEPA duties that were unlawfully imposed by CBP on its imports. These injuries are addressable through a refund (*i.e.* a money judgment) equal to the amount of the IEEPA duties paid plus interest.

18. Plaintiff's injury continues each day that the government does not return the funds it unlawfully collected.

## GENERAL PLEADINGS

**I.    The President issued several Executive Orders unlawfully imposing IEEPA duties.**

**A.    The Challenged Tariff Orders**

19. President Trump has issued a "dizzying array" of tariff orders and modifications by claiming authority under IEEPA. *Learning Resources*, slip op. at 9.

20.     On February 1, 2025, the President issued three Executive Orders implementing tariffs on imports from China, Mexico, and Canada.  Each of the Executive Orders was premised on IEEPA authorizing the tariffs.

21.     Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border* (Feb. 7, 2025), imposed a 25% tariff on the import of goods from Canada with an additional 10% tariff on "energy or energy resources."  The order justified IEEPA duties by citing a national emergency related to opioid trafficking.  *Id.*

22.     Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico.  The order justified IEEPA duties by citing alleged risks from the influx of illegal immigration and illicit drugs into the United States and Mexico's alleged inaction to counter those risks.  *Id.*

23.     Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.  This order similarly justified IEEPA duties by citing a national emergency related to opioid trafficking.  *Id.*

24.     On February 5, 2025, the President issued Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) which further modified Executive Order 14195 by eliminating *de minimis* treatment.

25.     On March 3, 2025, the President amended Executive Order 14195 again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply*

5

*Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 7, 2025) by increasing the additional 10% *ad valorem* tariff on products from China to 20% because China had "not taken adequate steps to alleviate the illicit drug crisis."

26.     On March 24, 2025, the President issued Executive Order 14245, *Imposing Tariffs on Countries Importing Venezuelan Oil*, 90 Fed. Reg. 13829 (Mar. 24, 2025) which imposed a 25% tariff on all goods imported into the United States from countries that directly or indirect import Venezuelan oil.

27.     On April 2, 2025, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 7, 2025) which imposed a baseline 10% tariff on nearly all imports to the United States and increased the "reciprocal" tariffs on 56 countries and the member states of the European Union effective April 9, 2025.  The higher, country-specific tariff rates ranged from 11% to 50%. *Id.*

28.     On April 8, 2025, the President issued Executive Order 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025) which increased the reciprocal tariff rate for Chinese-origin goods from 34% to 84%.

29.     The next day, the President issued Executive Order 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 15, 2025) which suspended the higher country-specific tariffs on all countries except for China for 90 days.  The order increased the reciprocal tariff for Chinese goods from 84% to 125%.  *Id.*  As a result, most Chinese-origin goods faced a total 145% IEEPA tariff between the 20% trafficking tariff and the 125% reciprocal tariff.  *See* Executive Order 14228; Executive Order 14266.

6

30.    On July 30, 2025, the President issued Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37739 (July 30, 2025) which imposed a 40% *ad valorem* tariff on certain products from Brazil.

31.    On August 6, 2025, the President issued Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38701 (Aug. 11, 2025) which imposed a 25% *ad valorem* tariff on imports from India for "directly or indirectly importing Russian Federation oil."  As a result, most Indian-origin goods faced a total 50% IEEPA tariff.

32.    On January 29, 2026, the President issued Executive Order 14380, *Addressing Threats to the United States by the Government of Cuba*, 91 Fed. Reg. 5085 (Feb. 3, 2026) which instructed the Secretary of Commerce to implement *ad valorum* duties on goods of foreign countries that directly or indirectly sell or otherwise provide any oil to Cuba.

33.    On February 6, 2026, the President issued Executive Order 14382, *Addressing Threats to the United States by the Government of Iran*, 91 Fed. Reg. 6493 (Feb. 11, 2026), which instructed the Secretary of Commerce to implement *ad valorum* duties on goods of foreign countries that directly or indirectly sell, purchase, or otherwise acquire any goods or services from Iran.

34.    The President further modified the above Executive Orders through amendments.

35.    Accompanying these increased tariffs, the President enacted changes to the Harmonized Tariff Schedule of the United States ("HTSUS") and required goods subject to IEEPA duties be entered under new tariff codes.

36.     Through this complaint, Plaintiff seeks relief for all duties they have paid or will pay to the United States arising from the unlawful Executive Orders establishing or adjusting the IEEPA duties (collectively, the "Challenged Tariff Orders").

**B.     CBP's Implementation of the Challenge Tariff Orders**

37.     CBP is responsible for assessing and collecting duties, including the IEEPA duties.  *See* 19 U.S.C. §§ 1500, 1502.

38.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS.  Pub. L. No. 100-418, 102 Stat. 1107 (1988).  CBP classifies merchandise imported into the United States consistent with the HTSUS, which utilizes an organized system of chapters, headings, and subheadings, each identifying goods and applicable duty rates.  The HTSUS headings cover broad categories of goods while the subheadings provide additional specifications for the broad categories of goods in the headings.

39.     CBP's regulations govern the classification of goods, consistent with administrative and judicial interpretation, and the appraisement of goods.  19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

40.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential directives.  19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President . . . .").

41.     When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods.  19 U.S.C. §§ 1202, 1500, 1502.  In connection with this

role, CBP is responsible for confirming the HTSUS classification of the goods and the applicable rates established by the HTSUS. *Id.*

## C.    Liquidation

42.    "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

43.    When goods enter the United States, the importer of record pays an estimated duty based on the customs declaration and entry documentation which assert the good's value, origin, and HTSUS classification. 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

44.    CBP's automated system is set to automatically liquidate entries 314 days after entry into the United States, unless liquidation is extended or suspended, or a CBP user manually removes the entry from the automated process. 19 C.F.R. § 159.9.

45.    Despite the U.S. Supreme Court ruling in *Learning Resources, Inc. v. Trump* on February 20, 2026, CBP continues to affirmatively liquidate entries with IEEPA duties.

46.    CBP could stop the automatic liquidation of entries with IEEPA duties.

47.    For some entries, CBP reviews and finalizes the goods' classification, value, duty rate, and the final amount of duty owed for the imported goods. 19 U.S.C. § 1500. For many entries, CBP does not actively review each entry; CBP sets its system to automatically liquidate most entries 314 days after entry. In the minority of cases in which CBP actively reviews specific entries, CBP then "liquidates" the entry and notifies the importer of record the final assessed duty, including notifying the importer of record if additional duties are owed or if the importer is entitled to a refund for excess duties paid at importation. 19 U.S.C. § 1504.

9

48.    Unless extended, liquidation must occur within one year from the date of entry. 19 U.S.C. § 1504(a).

49.    CBP can extend the liquidation deadline for up to one year based on an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

50.    After liquidation occurs, and if it is protestable, an importer of record has 180 days to file a protest contesting the liquidation. 19 U.S.C. § 1514. This protest procedure demands that CBP "reliquidate" the entry to correct for "any clerical error, mistake of fact, or other inadvertence . . . in any entry, liquidation, or reliquidation, and, decisions of the Customs Service." *Id.*

51.    Plaintiff is not aware of CBP granting any protest and re-liquidating entries without IEEPA tariffs where those tariffs were imposed upon entry.

52.    This Court has the authority to reliquidate entries subject to IEEPA duties. *AGS Co. Auto. Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255, 2025 WL 3634261 at *3 (Ct. Int'l Trade Dec. 15, 2025) ("Additionally, the panel in *In re Section 301 Cases* unanimously agreed—as we do now—that the USCIT has 'the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties.'") (citations omitted). Further, the government represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

53.    The United States has taken the position that it will not oppose re-liquidation of entries without IEEPA tariffs or the refund of those tariffs for plaintiffs in the *V.O.S. Selections* lawsuit challenging the IEEPA tariff payments. *See* Emergency Motion for a Stay Pending

Appeal and an Immediate Administrative Stay at 25, *V.O.S. Selections Inc. et al. v. Trump et al.*, 149 F.4th 1312 (Fed. Cir. 2025) (Nos. 2025-1812, 2025-1813) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

## II.    The Supreme Court has held that IEEPA does not authorize the President to impose duties.

54.    On April 14, 2025, several importers challenged the legality of the IEEPA duties through an action in this Court. *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Ct. Int'l Trade 2025). On May 28, 2025, this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. *See V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). Upon appeal, the Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing. *See V.O.S. Selections, Inc. v. Trump*, No. 25-1812, 2025 WL 1649290 (Fed. Cir. June 10, 2025).

55.    On August 29, 2025, the Federal Circuit affirmed this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

56.    In a separate lawsuit, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs. *See Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit. Before the D.C. Circuit held argument, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources* and consolidated the cases with argument on November 5, 2025.

11

57.    On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

58.    In each of the Challenged Tariff Orders, including the Trafficking Tariff Orders and Reciprocal Tariff Orders, the President based his authority to impose tariffs on IEEPA, 50 U.S.C. § 1701 *et seq*.

59.    The Supreme Court's decision in *Learning Resources* makes clear that Executive Orders claiming authority to impose tariffs under IEEPA were issued contrary to law.  Likewise, subsequent actions by USITC and CBP to implement the commands of those presidential orders were unlawful.

60.    CBP continued to collect the IEEPA duties during the *Learning Resources* litigation.

61.    Pursuant to the Supreme Court decision, the President issued Executive Order, *Ending Certain Tariff Actions*, (Feb. 20, 2026), which stated the "additional *ad valorem* duties imposed pursuant to IEEPA in Executive Order 14193, as amended; Executive Order 14194, as amended; Executive Order 14195, as amended; Executive Order 14245; Executive Order 14257, as amended; Executive Order 14323, as amended; Executive Order 14329, as amended; Executive Order 14380; and Executive Order 14382 shall no longer be in effect and, as soon as practicable, shall no longer be collected."  The Executive Order instructed the head of each agency to "as soon as practicable, terminate the collection of the additional *ad valorem* duties." *Id.*

62.    The President did not issue any public statement or instructions to refund IEEPA payments made by importers.

12

63.     On February 22, 2026, CBP announced it would cease collecting IEEPA duties for "goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).

64.     USITC has not received a directive to update the HTSUS to remove the HTSUS codes related to the IEEPA duties. USITC's website lists a notice: "The USITC has not yet received further direction to modify the HTS at this time; therefore, the IEEPA duties remain listed until further notice."[1]

65.     Despite the Supreme Court ruling on February 20, 2026, holding that IEEPA does not authorize the imposition of tariffs, CBP has continued well past that date to liquidate entries with IEEPA tariffs imposed. *See* Declaration of Brandon Lord at 6-7, *Atmus Filtration Inc. v. United States et al.*, No. 26-01259 (Ct. Int'l Trade Mar. 6, 2026).

## III.    Plaintiffs paid IEEPA duties.

66.     Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

67.     The goods Plaintiff imports into the United States that were subject to the IEEPA duties were entered under the new HTSUS codes required by CBP. These goods were subject to the unlawful IEEPA duties upon entry to the United States. CBP liquidated some of these entries while others remain in the liquidation process.

68.     Plaintiff has paid IEEPA duties on numerous entries. Plaintiff has paid at least $1,000,000 in IEEPA duties for its entries to date.

---

[1] Harmonized Tariff Schedule, United States International Trade Commission, https://hts.usitc.gov/ (last visited April 21, 2026).

## COUNT 1

### THE IEEPA TARIFFS IMPOSED ON PLAINTIFF WERE UNLAWFUL

69.     Plaintiff incorporates paragraphs 1-68 above by reference.

70.     In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA.  *Learning Resources*, slip op. at 5.  The Supreme Court considered this Court's ruling and the Federal Circuit's affirmance that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.  *Id.*

71.     The Supreme Court held that IEEPA does not authorize the President to impose tariffs.  *See Learning Resources*, slip op. at 16 ("Our task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").  In coming to this conclusion, the Supreme Court affirmed the Federal Circuit's decision, which in turn affirmed this Court's rulings on the merits of the IEEPA duties.  *Id.* at 21.

72.     The Challenged Tariff Orders based the power to impose duties and modify the HTSUS on IEEPA.

73.     The imposition of tariffs under IEEPA was unlawful.

74.     The government confirmed it will refund the IEEPA duties for the litigating parties in the event the Supreme Court finds them unlawful.  *See* Emergency Motion for a Stay Pending Appeal and an Immediate Administrative Stay at 25, *V.O.S. Selections Inc. et al. v. Trump et al.*, 149 F.4th 1312 (Fed. Cir. 2025) (Nos. 2025-1812, 2025-1813) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

75. Further, the government stated liquidation will not prevent a refund. *AGC Co. Auto. Sols., et al. v. U.S. Customs & Border Prot.*, 2025 WL 3634261, at \*4 (Ct. Int'l Trade Dec. 15, 2025) ("For the reasons stated above, we conclude that the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in *V.O.S.* Gov't Resp. at 2–3."). This Court was unequivocal that the CBP cannot deny a refund because of the liquidation. *Id.* ("The Government would be judicially estopped from "assum[ing] a contrary position" in the future. *New Hampshire v. Maine*, 532 U.S. at 749."). Plaintiff is not prevented from seeking a refund for entries that are now, or in the future may be, in a post-liquidation posture.

76. This Court is bound by the Supreme Court's decision in *Learning Resources* and because of that decision should order refunds of all IEEPA duties paid by Plaintiff, with pre-liquidation and post entry liquidation interest, as provided by law.

**COUNT 2**

**THE IEEPA TARIFFS IMPOSED ON PLAINTIFF VIOLATED THE ADMINITRATIVE PROCEDURES ACT**

77. Plaintiff incorporates paragraphs 1-68 above by reference.

78. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA. *Learning Resources*, slip op. at 5. The Supreme Court considered this Court's ruling and the Federal Circuit's affirmance that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods. *Id.*

79. The Supreme Court held that IEEPA does not authorize the President to impose tariffs. *See Learning Resources*, slip op. at 16 ("Our task … is to decide only whether the power

15

to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").  In coming to this conclusion, the Supreme Court affirmed the Federal Circuit's decision, which in turn affirmed this Court's rulings on the merits of the IEEPA duties.  *Id.* at 21.

80.     The Challenged Tariff Orders based the power to impose duties and modify the HTSUS on IEEPA.

81.     Under the Administrative Procedures Act, the reviewing court has the authority to hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See* 5 U.S.C. § 706.

82.     The imposition of tariffs under IEEPA was not "in accordance of law" and was a violation of the Administrative Procedures Act.

83.     Upon the Supreme Court's declaration that tariffs imposed under IEEPA were unlawful, Defendants had a legal obligation to refund the payments it unlawfully required of importers.

84.     Upon the Supreme Court's declaration that tariffs imposed under IEEPA were unlawful, Defendants had a legal obligation to cease all administrative processes that fostered the collection and retention of IEEPA tariffs, including the liquidation of entries with IEEPA duties.

85.     CBP continues to liquidate IEEPA duties after the Supreme Court's decision and after Executive Order 14389 terminating all tariffs based under IEEPA.  *See* Declaration of Brandon Lord at 6-7, *Atmus Filtration Inc. v. United States et al.*, No. 26-01259 (Ct. Int'l Trade Mar. 6, 2026).

86.     Despite negative legal action starting on May 28, 2025, with this Court's decision to grant summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the

government from enforcing the IEEPA duties at issue in that case, CBP did not take proactive steps to determine an effective method for stopping liquidation or implementing IEEPA refunds. *See V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). Rather CBP apparently delayed until the Supreme Court's decision to consider methods for halting liquidation and distributing IEEPA refunds.

87. Due to CBP's lack of preparation in considering methods for refunds and halting the liquidation, CBP continues to delay the refund process, incurring significant costs to the U.S. taxpayers who will ultimately burden the massive interest payments due to importers. CBP further continues to liquidate IEEPA duties weekly, and therefore continues to injure Plaintiff and other importers, and continues to act contrary to law.

88. CBP's delay in halting liquidation with IEEPA tariffs is of its own creation. The Supreme Court's decision was a foreseeable conclusion of the IEEPA legal challenges due to the legal action in the lower courts. CBP's continued liquidation with IEEPA tariffs is therefore agency action not in accordance with law. *See* 5 U.S.C. § 706(2).

89. CBP's failure to take required action and unreasonable delay in refunding Plaintiff for payment of IEEPA duties constitutes agency action unlawfully withheld and unreasonably delayed, all in further violation of the Administrative Procedures Act. *See* 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

    a.    order CBP to reliquidate all of Plaintiff's entries that have been liquidated with IEEPA duties;

17

b.     order CBP to liquidate all of Plaintiff's unliquidated entries previously subject to IEEPA duties without the applicable IEEPA duties;

c.     order the United States to refund promptly Plaintiff for all IEEPA duties collected from Plaintiff on all entries subject to IEEPA duties, with interest, as provided by law;

d.     enjoin Defendants and their agents, employees, and any other persons acting under Defendants' direction or control from engaging in any effort to collect or liquidate any IEEPA duties, whether through automatic processes or otherwise;

e.     award Plaintiff their reasonable costs, including attorneys' fees, incurred in bringing this action; and

f.     grant further relief as this Court deems proper.

Dated: April 29, 2026                NIXON PEABODY LLP


By: /s/ Joseph B. Maher
     Joseph B. Maher
     jmaher@nixonpeabody.com
     Katherine McQuillen
     kmcquillen@nixonpeabody.com

     799 9th Street NW
     Suite 500
     Washington, DC 20001-5327
     Telephone:   202-585-8000
     Facsimile:   202-585-8080

     *Counsel for Plaintiff Zyno Medical LLC*

18